[No. B019050. Second Dist., Div. Two. Mar. 31, 1987.]

PAUL DUFFY et al., Plaintiffs and Appellants, v.
CITY OF ARCADIA, Defendant and Respondent.

COUNSEL

Donald W. Cook for Plaintiffs and Appellants.

Michael H. Miller, City Attorney, Burke, Williams & Sorensen, Peter M. Thorson and Kevin S. Mills for Defendant and Respondent.

OPINION

**ROTH, P. J.**—Plaintiffs Paul and Eunice Duffy, newspaper distributors, appeal from the judgment entered in favor of defendant City of Arcadia (City) declaring that subdivision 9 of Arcadia Municipal Code section 6439, which sets a height limit for newspaper racks, is constitutional. We affirm.

I.

FACTS AND PROCEDURAL BACKGROUND

In 1977, City adopted Municipal Code section 6439 to regulate the size, placement and condition of newspaper racks on its streets. Although plaintiffs then distributed newspapers in City, they brought no legal challenge to the newly enacted ordinance.

In 1983, City discovered that at an unknown time, plaintiffs had replaced their formerly conforming newspaper racks with 18 double-deck newspaper racks at 8 different locations in City. The new five-foot-high racks violated subdivision 9 of Arcadia Municipal Code section 6439 which states: "No news rack shall exceed four (4) feet in height, thirty (30) inches in width or two (2) feet in thickness."

In 1984, City wrote to plaintiffs, informing them that the newsracks violated the local height limits and asking them to remedy the matter.

Plaintiffs responded by filing suit for declaratory and injunctive relief, alleging the ordinance was unconstitutional on various grounds. The trial court first issued a temporary restraining order in favor of plaintiffs and subsequently granted them a preliminary injunction. However, after a plenary trial on the merits, the superior court dissolved the preliminary injunction, concluded that the ordinance violated neither state nor federal constitutional guarantees, and entered judgment in favor of City.[1]

---

[1] Relying upon *Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 305 [138 Cal.Rptr. 53, 562 P.2d 1302], the superior court construed subdivision 13 of the ordinance

Plaintiffs thereafter appealed and sought from this court a writ of supersedeas to restrain City from enforcing the ordinance during the pendency of the instant appeal. We summarily denied the request whereupon plaintiffs sought relief in the California Supreme Court. That court issued a writ to restrain City from enforcing the ordinance "to remove or to require the removal of [plaintiffs'] news racks" pending final determination of this appeal.

II.

DISCUSSION

■ While it is well settled that public distribution of newspapers and periodicals through newsracks falls within the ambit of constitutional protections (*Kash Enterprises, Inc.* v. *City of Los Angeles, supra,* 19 Cal.3d 294, 302 and cases cited therein), it is equally well established that a local municipality retains authority to impose reasonable time, place and manner regulations upon the use of newsracks so as to protect legitimate state interests. (*Id.,* at pp. 302-303 and cases cited therein.) ■ As the challenged portion of City's ordinance is undisputedly "content neutral," it will be upheld if clearly and narrowly drawn so as to avoid arbitrary and unnecessary curtailment of the constitutional guarantees of freedom of the press and freedom of speech. (*Id.,* at p. 303.) And inasmuch as the thrust of plaintiffs' contention at trial was that *application* of the ordinance would result in an unreasonable limitation on the dissemination of protected ideas, we examine the evidence adduced therein.

The Arcadia City Council adopted the subject ordinance following a public hearing. Remarks from both the city attorney who explained the reasons for drafting of the ordinance and the city council members who discussed the ordinance establish its general purposes were to improve public safety and to enhance the aesthetic quality of the City. ■ Regulations to further those two goals fall within the permissible bounds of the police power of a city. (*Metromedia, Inc.* v. *San Diego* (1981) 453 U.S. 490, 507-508 [69 L.Ed.2d 800, 814-815, 101 S.Ct. 2882]; *Southern N. J. Newspapers* v. *State of N.J. etc.* (D.C.N.J. 1982) 542 F.Supp. 173, 185; *Philadelphia News., Inc.* v. *Borough C., etc., Swathmore* (E.D.Pa. 1974) 381 F.Supp. 228,

which mandates that newsracks be "clean, neat and attractive" to merely mean "clean and neat" in order to eliminate any constitutional problems of vagueness and arbitrary application.

The trial court also enjoined City from enforcing subdivision 24 which states that each newsrack "shall conform to the physical specifications kept on file by the Business License Officer in the Finance Department by January 1, 1978."

City does not contest either of those rulings.

244.) And evidence was presented that newsracks were available which would conform to the ordinance's requirements, a fact plaintiffs have never disputed.

On this appeal, plaintiffs place much emphasis on the fact that the city council did not articulate each specific argument City now makes as to how the ordinance furthers those legitimate state interests. There is no such requirement. ■ An ordinance need not recite all of the specific reasons for its enactment.[2] (5 McQuillan, Municipal Law, § 16.15, p. 141.)

■ At bench, it is self-evident a row of newsracks higher than four feet could obstruct the view of a pedestrian, poised to step into the street, of low-riding sportscars or children on bicycles, or that those racks could make it difficult for drivers in the street to see a person emerging from behind them. Equally obvious is that the aesthetic quality of the environment could be improved by standardizing the size, shape, and maintenance of the news-racks. We therefore conclude that, *on its face,* the ordinance passes constitutional muster as it was properly enacted to further legitimate governmental concerns and leaves open adequate alternative channels of communication. (*Schad* v. *Mt. Ephraim* (1981) 452 U.S. 61, 75-76 [68 L.Ed.2d 671, 684-685, 101 S.Ct. 2176].)

■ To avoid the force of this last conclusion, plaintiffs attempted to convince the trial court that *application* of the ordinance resulted in a constitutionally deficient law. In that regard, they urged that the City's prohibition on newsracks higher than four feet precluded them from using double-deck newsracks which allegedly are more economically feasible for distribution of lesser known and established newspapers because two different periodicals can be placed in one newsrack.[3] While plaintiffs conceded that conforming one-level newsracks were available from at least two different manufacturers, they asserted the purchase and installation of those racks would result in an increased cost of 50 percent. Moreover, they claimed that at six of their eighteen newsrack locations, no additional legal sidewalk space remained so that if they were forced to remove their double-deck racks, half of the papers sold there would be forced to relocate to less commercially productive locations. Paul Duffy declared: "I personally know of at least two former distributors of small newspapers who did quit

---

[2] Significantly, nothing in the record of the city council proceedings indicates that the enactment of the ordinance was in any way prompted by inappropriate motives such as a desire to prevent the dissemination of "unpopular ideas," or an intent to drive particular individuals out of business.

[3] Plaintiffs' argument in this regard is somewhat undercut by their concession that double-deck newsracks were originally designed to accommodate The Wall Street Journal and Barrons.

distributing in Arcadia when this ordinance came in because they could not afford to comply with the new model requirements or to challenge them in suits: The Martynecs and the former Free Press distributor."

We find plaintiffs' purported evidentiary showing inadequate. The last quoted declaration was patently grounded upon inadmissible hearsay. But of even more significance was plaintiffs' failure to tender declarations from the individuals referenced therein. These were people with whom plaintiffs were personally acquainted and who allegedly could have substantiated plaintiffs' claim that *application* of the ordinance resulted in an impermissible restriction on dissemination of constitutionally protected matter. However, plaintiffs, without explanation, offered no declarations or testimony from them. ■ "If weaker and less satisfactory evidence is offered when it was within the power of the party to produce stronger and more satisfactory evidence, the evidence offered should be viewed with distrust." (Evid. Code, § 412.)

■ Viewed in this context, plaintiffs' earlier noted generalized claims that the increase in cost and relocation of newsracks which would flow from compliance with the ordinance would unreasonably impinge upon the dissemination of ideas must fail as being vague, speculative, and conclusionary. At best, plaintiffs established that compliance with the ordinance may necessitate additional expenditures. But that fact, be it a fact, falls far short of discharging plaintiffs' burden of establishing that the ordinance *as applied* results in an unreasonable restriction upon the exercise of constitutional guarantees.

### III.

#### DISPOSITION

The judgment is affirmed.

Compton, J., and Fukuto, J., concurred.